WENDY DIXON vs. PERRY & SLESNICK, P.C.,[1] & others.[2]

No. 08-P-1421.

Hampshire. April 17, 2009. - September 28, 2009.

Present: RAPOZA, C.J., VUONO, & MEADE, JJ.

*Contract,* Employment, Arbitration. *Labor,* Wages, Failure to pay wages. *Dentist.*

In a civil action brought by the plaintiff against her former employer, alleging breach of contract and violation of the Massachusetts Wage Act (Wage Act), G. L. c. 149, §§ 148 et seq., arising from the employer's failure to pay the plaintiff all the compensation owed under the parties' employment agreement, the trial court judge erred in denying the employer's motion to dismiss and to compel arbitration under the mandatory arbitration provision in the parties' employment agreement, where the language of the Wage Act did not necessarily bar the arbitration of such a claim, and where the plaintiff's claim, as it was brought solely on her behalf and after notice to the Attorney General, was one that could be arbitrated [272-276]; and where the plaintiff, who had voluntarily executed the individually negotiated employment agreement and who had brought claims arising directly from a term of that agreement (i.e., her rate of compensation), did in fact waive her right to litigate her claim in court and agree to submit to arbitration, regardless of the fact that the language of the arbitration provision did not specifically waive claims under the Wage Act [277-279].

CIVIL ACTION commenced in the Superior Court Department on April 3, 2008.

A motion to dismiss and to compel arbitration was considered by *Bertha D. Josephson,* J.

*George H. Boerger* for the defendants.

*Patricia A. Szumowski* for the plaintiff.

RAPOZA, C.J. The question presented in this appeal is whether a claim under the Massachusetts Wage Act, G. L. c. 149, §§ 148 et seq. (Wage Act), is subject to a mandatory arbitration provi-

---

[1]Doing business as 1st Advantage Dental.

[2]David Perry and Michael Slesnick.

sion in the parties' individually negotiated employment agreement. We conclude that it is and reverse the order denying the defendants' motion to dismiss and to compel arbitration.

*Background.* Plaintiff Wendy Dixon, a dentist, was hired by the predecessor corporation to defendant Perry & Slesnick, P.C.[3] In 2004, Dixon and her employer executed an "Employment and Non-Competition Agreement" (agreement). The agreement included a section entitled "Remedies," which states in relevant part:

> "[A]ll disagreements and controversies arising with respect to this Agreement, or with respect to its application to circumstances not clearly set forth in this Agreement, shall be settled by binding arbitration . . . .

> "All rights and remedies of each Party under this Agreement are cumulative and in addition to all other rights and remedies which may be available to that Party from time to time, whether under any other agreement, at law, or in equity."

Dixon resigned her employment and terminated the agreement in August, 2007. On April 3, 2008, she sued the defendants in Superior Court for breach of contract and violation of the Wage Act, alleging that they did not pay her all the compensation owed to her under the agreement. The defendants filed a motion to dismiss the complaint and to compel arbitration. Dixon conceded that her breach of contract claim is subject to arbitration, but argued that her statutory claim is not. A Superior Court judge summarily denied the defendants' motion in its entirety, and the defendants filed this appeal pursuant to G. L. c. 251, § 18(*a*)(1).

*Discussion.* The " 'gateway dispute about whether the parties are bound by a given arbitration clause' [is] an issue for judicial resolution." *Feeney* v. *Dell Inc.*, 454 Mass. 192, 198-199 (2009), quoting from *In re Am. Express Merchants' Litigation*, 554 F.3d 300, 311 (2d Cir. 2009), petition for cert. filed, 77 U.S.L.W. 3670 (U.S. May 29, 2009) (No. 08-1473). On appeal, we review

---

[3]Individual defendants David Perry and Michael Slesnick were the officers of the defendant professional corporation, which appears to be no longer in existence.

the decision on the motion to compel arbitration de novo. *Feeney* v. *Dell, Inc.*, *supra*.

The Wage Act requires employers to pay wages promptly to employees. The Wage Act further provides: "No person shall by a special contract with an employee or by any other means exempt himself from this section or from section one hundred and fifty." G. L. c. 149, § 148, as amended through St. 1956, c. 259. General Laws c. 149, § 150, provides, inter alia, that an employee may sue, after certain conditions are met, for a violation of § 148, including an award of treble damages, and shall be awarded attorney's fees if successful.

Dixon argues that the Wage Act prohibits arbitration provisions that encompass claims under §§ 148 and 150, citing the text of § 148 set out above, and language from § 150, as amended through St. 2005, c. 99, § 32, which provides: "An employee claiming to be aggrieved by a violation . . . may . . . institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action . . . ." Dixon maintains that the word "action" means only a suit brought in court and does not include a claim subject to arbitration. She asserts that "[s]ince an agreement to arbitrate is a waiver of an 'action,' i.e., a complaint in a court, an arbitration provision which includes Massachusetts Wage Act claims is a prohibited 'special contract with an employee' within the meaning of Section 148 of the Wage Act. Arbitration exempts the employer from Section 150 by avoiding both a direct action and a representative action by the employee on behalf of 'others similarly situated.' " Dixon also argues that even if judicial resolution of her claim under the Wage Act can be waived, she did not do so.

As to Dixon's first argument, we disagree and conclude that claims under the Wage Act are arbitrable. We discern nothing in the language of § 148 or § 150 that would lead us to conclude otherwise.[4] While it does not appear that a reported Massachusetts case has ever considered whether an aggrieved party

[4]In particular, we note the absence of any language in the statute or its legislative history prohibiting arbitration. See *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 29 (1991), quoting from *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985) (in compelling arbitration of claim under Federal Age Discrimination in Employment Act, Court stated that Congress "did not explicitly preclude arbitration or other nonjudicial resolution of claims. . . . 'If Congress intended the substantive

can be compelled to arbitrate a Wage Act claim, other statutory claims have been held to be subject to arbitration. For example, the Supreme Judicial Court recently confirmed that discrimination claims under G. L. c. 151B are arbitrable. *Warfield* v. *Beth Israel Deaconess Med. Center, Inc.*, 454 Mass. 390, 395 (2009). The United States Supreme Court has considered a similar question with respect to claims under the Federal Age Discrimination in Employment Act of 1967 (ADEA) and addressed many of the arguments Dixon raises here. *Gilmer* v. *Interstate/Johnson Lane Corp.*, 500 U.S. 20, 29 (1991) (*Gilmer*).

In *Gilmer*, the Supreme Court noted that a plaintiff bringing a claim under the ADEA must first file a charge with the Equal Employment Opportunity Commission (EEOC), which can use informal methods to ensure compliance or can institute a formal action against the employer. *Id.* at 27. The plaintiff in *Gilmer* argued that arbitration would be inconsistent with the ADEA's design to further certain social policies, in addition to resolving individual claims, and would weaken the role of the EEOC in enforcing the ADEA. *Id.* at 26-27. The Court rejected the plaintiff's arguments. *Id.* at 27-28. "We do not perceive any inherent inconsistency between those [social] policies, however, and enforcing agreements to arbitrate age discrimination claims. It is true that arbitration focuses on specific disputes between the parties involved. The same can be said, however, of judicial resolution of claims. Both of these dispute resolution mechanisms nevertheless also can further broader social purposes. . . . 'So long as the prospective litigant effectively may vindicate [his or her] statutory cause of action in the arbitral forum, the statute will continue to serve both its remedial and deterrent function.' " *Ibid.*, quoting from *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 (1985).

In *Gilmer*, the Court also rejected the plaintiff's argument that arbitration would "undermine" the ability of the EEOC to enforce the ADEA, noting that "[a]n individual ADEA claimant subject to an arbitration agreement will still be free to file a charge with the EEOC, even though the claimant is not able to institute a private judicial action," and that "the mere involve-

protection afforded . . . to include protection against waiver of the right to a judicial forum, that intention will be deducible from text or legislative history' ").

ment of an administrative agency in the enforcement of a statute is not sufficient to preclude arbitration." *Id.* at 28-29. The Court similarly rejected the plaintiff's argument that arbitration procedures are inadequate to further the purposes of the ADEA, in light of the broad remedial powers of arbitrators. *Id.* at 32. See *Drywall Sys., Inc.* v. *ZVI Constr. Co.*, 435 Mass. 664, 667 (2002); *Superadio Ltd. Partnership* v. *Winstar Radio Prod., LLC*, 446 Mass. 330, 337-339 (2006) (upholding arbitration panel's imposition of monetary sanctions for a discovery violation).

Although we conclude that the language of G. L. c. 149, §§ 148 and 150, does not operate as a per se bar to the arbitration of a Wage Act claim for many of the reasons set forth in *Gilmer*, whether a particular claim can be arbitrated is subject to a case-by-case analysis. Considering the record before us, we conclude that Dixon's specific claim under the Wage Act can be arbitrated.

As an initial matter, our determination that the Wage Act does not bar arbitration of Dixon's claim does not "exempt" her employer from the operation of either G. L. c. 149, § 148 or § 150, as she contends.[5] Dixon may continue to pursue her claim in arbitration and, if successful on the merits, be eligible for all the remedies that she seeks under the Act, including multiple damages and attorney's fees. See *Warfield* v. *Beth Israel Deaconess Med. Center, Inc.*, 454 Mass. at 398 n.13 (in claims pursuant to G. L. c. 151B, "[a]n employee who agrees to arbitrate such a claim of course does not forgo the substantive rights afforded by the statute"). See also *Gilmer*, 500 U.S. at 26, quoting from *Mitsubishi Motors Corp.* v. *Soler Chrysler-Plymouth, Inc.*, 473 U.S. at 628 ("[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum").

---

[5]In this way, the instant case is distinguishable from other recent cases addressing claims under the Wage Act in which employers attempted to avoid the substantive provisions of the statute. See *Electronic Data Sys. Corp.* v. *Attorney Gen.*, 454 Mass. 63, 70 (2009) ("the Wage Act would have little value if employers could exempt themselves simply by drafting contracts that placed compensation outside its bounds"). See also *Stanton* v. *Lighthouse Financial Servs., Inc.*, 621 F. Supp. 2d 5, 15-16 (D. Mass. 2009). The arbitration provision we consider here does not implicate any of Dixon's substantive rights under the Wage Act.

We start by observing that G. L. c. 149, § 150, requires an employee who seeks relief under the Wage Act to submit a complaint to the Attorney General notifying her of the alleged violation.[6] After the expiration of ninety days, or sooner if the Attorney General assents in writing, the employee may then pursue a civil action against the employer either on her own behalf or for herself and for others who are similarly situated. In any such civil action the employee may seek both injunctive relief and any damages incurred, including treble damages for loss of wages and other benefits. Where successful, the employee is also entitled to an award of costs of the litigation and reasonable attorney's fees.

In the present case, Dixon complied with the provision requiring notice to the Attorney General before filing suit in Superior Court. Consequently, submitting her claim now to arbitration would not frustrate the statutory requirement of notice to the Attorney General, as that has already occurred. Moreover, as noted in *Gilmer, supra* at 28, Dixon, or any other aggrieved employee subject to an arbitration provision, would be able to file a complaint with the Attorney General even though she or he would not be able to seek further redress in a judicial forum.

Here, Dixon brought a claim solely on her own behalf and not, as the Wage Act permits, on behalf of any other persons similarly situated. As a result, the submission of Dixon's claim to arbitration does not affect the rights of third parties who are not subject to the arbitration provisions of her employment agreement.[7] Similarly, while the Supreme Judicial Court has acknowledged the broad remedial powers arbitrators may possess, see, e.g., *Superadio Ltd. Partnership* v. *Winstar Radio Prod., LLC*, 446 Mass. at 337, we need not tarry on the point, as Dixon seeks only money damages, which are clearly available in arbitration. In sum, Dixon's claim under the Wage Act can be arbitrated.

---

[6]This requirement recognizes the Attorney General's considerable enforcement powers under the Wage Act and the corresponding importance of her receiving notice of alleged infractions.

[7]In any event, it appears that class actions, which are permitted under the Wage Act, can be maintained in the arbitration forum. See, e.g., *DaLuz* v. *Department of Correction*, 434 Mass. 40, 42 n.9 (2001); *Feeney* v. *Dell Inc.*, 454 Mass. at 205 ("class arbitrations do in fact occur"). As Dixon has not sought to maintain such an action, however, this point is irrelevant to the resolution of the instant case.

Having established both that the language of G. L. c. 149, §§ 148 and 150, does not necessarily bar the arbitration of a Wage Act claim and that Dixon's claim, as brought, is one that can be arbitrated, we turn to the final part of our analysis: whether Dixon did in fact waive her right to litigate her claim in court and agree to submit to arbitration. "We apply general principles of State contract law to determine whether a particular agreement requires arbitration of a claim." *Warfield* v. *Beth Israel Deaconess Med. Center, Inc.*, 454 Mass. at 396.[8] For the following reasons, we conclude that Dixon waived her right to judicial resolution and is compelled to arbitrate her Wage Act claim.

First, the agreement here is an individually negotiated employment contract and not a collective bargaining agreement. Despite her attempts to portray herself as being in an unequal bargaining position with the defendants, Dixon is an educated professional. In addition, she could have retained a lawyer to review the contract before she signed it. While Dixon hints at being pressured to sign the agreement quickly, the record does not support the conclusion that her execution of the agreement was anything but voluntary.

Second, in contrast to the facts in *Warfield* v. *Beth Israel Deaconess Med. Center, Inc.*, *supra*, Dixon's claims arise directly from a term of the agreement, namely, Dixon's rate of compensation. In holding that the arbitration provision at issue in *Warfield* did not encompass discrimination claims under G. L. c. 151B, the Supreme Judicial Court stated, "Read as a whole, the contract language chosen by the parties suggests an intent to arbitrate disputes that might arise from or be connected to the specific terms of the agreement itself; there is no contractual term dealing with discrimination." *Id.* at 402. Here, of course, there is a contractual term dealing with compensation, and Dixon's Wage Act claim (and her common-law breach of contract claim) originates from that provision of the agreement.

[8]Dixon argues that she must have waived her right to seek judicial resolution of her Wage Act claim "explicitly and voluntarily," citing *Blanchette* v. *School Comm. of Westwood*, 427 Mass. 176, 184 (1998). *Blanchette*, which concerned whether an arbitration clause in a collective bargaining agreement applied to a discrimination claim under G. L. c. 151B, is inapposite here. Moreover, even if we were to agree that "explicit and voluntary" is the standard to be applied, a point we do not and need not resolve, Dixon's waiver satisfied this standard for the reasons hereinafter explained.

Third, Dixon was capable of waiving her right to judicial resolution of her Wage Act claim even though the arbitration clause in the agreement does not specifically reference claims under the Wage Act. While holding that arbitration provisions that intend to encompass discrimination claims under G. L. c. 151B must be "stated in clear and unmistakable terms," *id.* at 398, the Supreme Judicial Court also stated, "Our conclusion in this case should not be understood to suggest that parties entering into an employment (or any other) contract must specifically list every possible statutory claim that might arise or else the claim will not be covered by an otherwise 'broad' arbitration clause." *Id.* at 401 n.16. Dixon agreed to arbitrate "all disagreements and controversies arising with respect to" her employment contract, including her claim under the Wage Act for compensation allegedly owed to her.

Fourth, we disagree with Dixon that the reservation of rights clause in the agreement renders the arbitration provision ambiguous and therefore unenforceable. That clause reads: "All rights and remedies of each Party under this Agreement are cumulative and in addition to all other rights and remedies which may be available to that Party from time to time, whether under any other agreement, at law, or in equity." This provision acknowledges the causes of action available to the parties outside of the contract itself, but it does not exempt these claims from the arbitration clause. See *Laughton* v. *CGI Technologies & Solutions, Inc.*, 602 F. Supp. 2d 262, 265 (D. Mass. 2009), quoting from Morse *vs.* Sir Speedy, Inc., U.S. Dist. Ct., No. 97-40013-NMG (D. Mass. Nov. 17, 1997) (court refused to render the contract's arbitration provision "meaningless" because the contract also contained a reservation of rights clause; "[t]he correct reading of the Arbitration and Cumulative Remedies provisions is that arbitration is mandatory, but 'the arbitrator is not limited to awarding certain remedies but rather may award all remedies provided for at law' ").

Finally, there is a strong public policy favoring arbitration in Massachusetts. *Drywall Sys., Inc.* v. *ZVI Constr. Co.*, 435 Mass. at 669. "[T]here is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the

arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' " *Massachusetts Hy. Dept.* v. *Perini Corp.*, 444 Mass. 366, 374 (2005), quoting from *Local No. 1710, Intl. Assn. of Fire Fighters* v. *Chicopee*, 430 Mass. 417, 421 (1999).

> *Order denying motion to dismiss*
> *and to compel arbitration*
> *reversed.*