EDWARD MELIA *vs.* ZENHIRE, INC., & another.[1]

Suffolk. January 3, 2012. - May 8, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Contract,* Employment, Choice of forum clause. *Massachusetts Wage Act. Practice, Civil,* Choice of forum, Motion to dismiss.

In a civil action alleging a violation of the Massachusetts Wage Act, G. L. c. 149, §§ 148 and 150 (Wage Act), the judge properly granted the defendant employer's motion to dismiss, where a forum selection clause in the employment contract at issue, which dictated that all disputes arising out of the contract or employment relationship were to be resolved in courts situated in New York, was enforceable under New York law and the plaintiff had not alleged any unfairness that would compel this court to reject the parties' choice of a foreign forum [168-169]; where public policy did not prevent application of the forum selection clause to Wage Act claims [169-173]; and where, although a forum selection clause that, in operation, would deprive an employee of substantive rights guaranteed by the Wage Act would violate public policy and would be unenforceable, this court was persuaded that a New York court, applying New York's choice-of-law rules, would apply Massachusetts law in this case [173-181].
Statement of recognition of a presumption that forum selection clauses in employment contracts are enforceable with respect to claims under the Massachusetts Wage Act, G. L. c. 149, §§ 148 and 150, and a description of the evidence that a party seeking to rebut such a presumption must produce. [181-182]

CIVIL ACTION commenced in the Superior Court Department on May 1, 2009.

A motion to dismiss was heard by *Paul E. Troy,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*John P. Carr* (*Christine Ann Faro* with him) for the plaintiff.

*Daniel S. Field* for the defendants.

*Benjamin G. Robbins & Martin J. Newhouse,* for New England Legal Foundation, amicus curiae, submitted a brief.

---

[1]Robert H. Fritzinger. Edward Melia's complaint also named Deborah Fritzinger as a defendant, but in his opposition to the defendants' motion to dismiss, Melia waived his claims against her and she is not a party to this appeal.

CORDY, J. In April, 2007, the plaintiff, Edward Melia, a Massachusetts resident, entered into an executive employment contract with the defendant Zenhire, Inc. (Zenhire). A forum selection clause dictated that all disputes arising out of the contract or the employment relationship were to be resolved in courts situated in Erie County, New York, Zenhire's principal place of business. Zenhire allegedly failed to pay Melia's salary from August, 2007, through February, 2008.

Melia commenced the present action in the Superior Court, alleging breach of contract, fraud, quantum meruit, and violations of the Massachusetts Wage Act, G. L. c. 149, §§ 148, 150 (Wage Act). With respect to the latter claim, Melia contended that the forum selection clause operated as a "special contract" that impermissibly exempted his employer from the requirements of the Wage Act. A judge in the Superior Court granted the defendants' motion to dismiss, pursuant to Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974),[2] reasoning that Melia could pursue his Wage Act claim in New York. Melia appealed, and we transferred the case to this court on our own motion.

We conclude that a forum selection clause operates as a special contract only when three conditions are met: the employee's claim is covered by the Wage Act; the court of the forum State, applying its choice-of-law principles, would choose a law other than that of Massachusetts to govern the dispute; and application of the foreign law will deprive the employee of a substantive right guaranteed by the Wage Act. Under modern choice-of-law doctrines, these conditions will rarely coincide. On the facts alleged in the present case, a New York court, applying New York's choice-of-law doctrine, would certainly apply the Wage Act to this dispute. Because enforcement of the forum selection clause would not deprive Melia of the protections of the Wage Act, we affirm the judge's dismissal of the action.[3]

1. *Background.* In reviewing a dismissal under rule 12 (b) (6),

---

[2]Although the defendants characterized this motion as a motion to dismiss for improper venue under Mass. R. Civ. P. 12 (b) (3), 365 Mass. 754 (1974), a motion to dismiss based on a forum selection clause is properly considered under Mass. R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974). See *Casavant* v. *Norwegian Cruise Line, Ltd.*, 63 Mass. App. Ct. 785, 789-790 (2005), cert. denied, 546 U.S. 1173 (2006).

[3]We acknowledge the amicus brief of the New England Legal Foundation.

we may consider the allegations in the complaint, items appearing in the record, and exhibits attached to the complaint. *Schaer* v. *Brandeis Univ.*, 432 Mass. 474, 477 (2000), quoting 5A C.A. Wright & A.R. Miller, Federal Practice and Procedure § 1357, at 299 (1990). We accept as true the factual allegations in the complaint, as well as any favorable inferences drawn therefrom. *Ginther* v. *Commissioner of Ins.*, 427 Mass. 319, 322 (1998).

Zenhire is a Delaware corporation with a principal place of business in Amherst, New York, a suburb of Buffalo. Zenhire was founded in 2003 to develop Internet-based tools and services for the recruiting industry. The defendant Robert H. Fritzinger, a New York resident, was at all pertinent times Zenhire's president and chief executive officer.

On April 2, 2007, Melia and Zenhire entered into an executive employment contract, pursuant to which Zenhire hired Melia as its vice-president of product and business development. Melia accepted a three-year period of employment with automatic renewal of additional one-year terms, unless either party objected. Zenhire reserved the right to terminate Melia at any time for cause. Zenhire agreed to compensate Melia with an initial base salary of $150,000. Melia was also eligible to participate in an executive bonus plan and a stock option plan.

The contract contained choice-of-law and forum selection clauses, as follows:

> "This agreement shall be binding upon the parties hereto, and shall be governed and construed in accordance with the laws of the State of New York. Further, Company and Employee (i) agree that any and all disputes arising out of this Agreement or the employment relationship created thereby shall be resolved in the courts situated in the State of New York, County of Erie and (ii) consent to the venue of all courts situated in the State of New York, County of Erie."

Melia worked out of an office in Boston. At the inception of the contract, he regularly spent time in the Buffalo area, but at all times he resided in Boston. Melia conducted meetings with prospective customers of Zenhire only in Massachusetts. Zenhire withheld Massachusetts income taxes, paid Massachusetts

unemployment insurance, and obtained Massachusetts workers' compensation insurance for Melia's benefit.

Through August 29, 2007, both parties performed their obligations under the contract. Zenhire then experienced financial difficulties and stopped paying Melia. On September 28, 2007, Fritzinger told Melia that he was finalizing a deal that would provide Zenhire with financing. On November 16, 2007, Fritzinger again confirmed that Zenhire would compensate Melia for his work. Melia alleges he continued performing his duties pursuant to the contract through February, 2008, relying on Zenhire's repeated promises to compensate him. In February, 2008, Melia alleges he was forced to leave Zenhire for financial reasons and began to collect unemployment compensation. As of the end of February, 2008, Melia was allegedly owed $103,400, including unpaid wages of $75,000, vacation and sick day wages, severance pay, and unreimbursed expenses.

In September, 2008, Melia filed a complaint with the Attorney General with respect to Zenhire's alleged violation of the Wage Act. The Attorney General granted Melia the authority to file a civil action against Zenhire. Melia then commenced the present action in the Superior Court in May, 2009, against Zenhire, Fritzinger, and Deborah Fritzinger (Fritzinger's wife and a director of Zenhire), alleging violation of the Wage Act, breach of contract, quantum meruit, and fraud. The defendants moved to dismiss the entire action on the basis of the forum selection clause, and they also moved to dismiss each count on specific grounds. Melia voluntarily waived his claims against Deborah Fritzinger (see note 1, *supra*) and the count claiming quantum meruit.

The judge initially denied the defendants' motion to dismiss Melia's Wage Law claim, based on his understanding that the contract's choice-of-law provision called for application of New York law to all counts. He further concluded that application of New York's Payment of Wages Law, which was less protective of employees than the Wage Act, would conflict with fundamental Massachusetts policy.[4] Consequently, the judge concluded

---

[4]For example, employees prevailing in actions under the Wage Act are entitled to treble damages, G. L. c. 149, § 150, but those bringing actions under N.Y. Lab. Law § 198 (McKinney 2012 Supp.) are not.

that the forum selection clause would be unfair and unreasonable to Melia.[5]

The defendants moved for reconsideration. After considering arguments from both parties, the judge reversed his prior ruling with respect to the forum selection clause, holding that enforcement of the forum selection clause was fair and reasonable because there was no evidence of fraud, duress, or substantial imbalance of bargaining power between the parties; and that a New York court would engage in the same choice-of-law analysis as a Massachusetts court, and "may apply" the Wage Act to Melia's claims. Melia appealed.

2. *Validity of the forum selection clause in general.* We first examine the validity of the forum selection clause irrespective of the Wage Act claim. Because the contract states that it is to be governed and construed according to the laws of New York, we determine the validity of the forum selection clause according to the law of our sister State. See *Jacobson* v. *Mailboxes Etc. U.S.A., Inc.*, 419 Mass. 572, 575 (1995).

Like Massachusetts courts, see *id.* at 574-575, New York courts consider forum selection clauses to be "prima facie valid and enforceable unless shown by the resisting party to be unreasonable." *Brooke Group Ltd.* v. *JCH Syndicate 488*, 87 N.Y.2d 530, 534 (1996), citing *The Bremen* v. *Zapata Offshore Co.*, 407 U.S. 1, 15-18 (1972). A "forum selection clause is prima facie valid and enforceable unless it is shown by the challenging party to be unreasonable, unjust, in contravention of public policy, invalid due to fraud or overreaching, or it is shown that a trial in the selected forum would be so gravely difficult that the challenging party would, for all practical purposes, be deprived of its day in court." *Adler* v. *20/20 Cos.*, 82 A.D.3d 918, 919 (N.Y. 2011), and cases cited. "Forum selection clauses are enforced because they provide certainty and predictability in the resolution of disputes." *Boss* v. *American Express Fin. Advisors, Inc.*, 6 N.Y.3d 242, 247 (2006), quoting *Brooke Group Ltd.* v. *JCH Syndicate 488, supra.*

---

[5]In his initial memorandum of decision, the judge made rulings with respect to the motion to dismiss each individual count. Those rulings, which were rendered moot by his subsequent dismissal of the entire action, were not appealed from and are not before us.

New York courts have enforced broadly worded forum selection clauses to dismiss statutory causes of action arising from the employment relationship. *Boss* v. *American Express Fin. Advisors, Inc., supra* at 245-247 (requiring plaintiffs to litigate alleged violations of N.Y. Lab. Law § 193 [McKinney 2009] [impermissible deduction from wages] and § 198-c [McKinney 2009] [failure to pay wages] in Minnesota); *Adler* v. *20/20 Cos., supra* at 920 (requiring plaintiffs to litigate alleged violation of N.Y. Lab. Law § 215 [McKinney 2012 Supp.] [prohibiting retaliation] in Texas).

In the present case, the forum selection clause is enforceable under New York law. Melia has not demonstrated, or even argued, that litigating his claims in New York would be unreasonable, unjust, or for all practical purposes deprive him of his day in court. The forum selection clause is broadly worded to cover "all disputes arising out of this Agreement or the employment relationship created thereby." Under New York law, this clause encompasses all of Melia's claims, including the alleged statutory violation.

Finally, Melia has not alleged any unfairness that would compel this court to reject the parties' choice of a foreign forum, such as fraud, duress, the abuse of economic power, or any other unconscionable means. See *Cambridge Biotech Corp.* v. *Pasteur Sanofi Diagnostics*, 433 Mass. 122, 130 n.8 (2000); *Jacobson* v. *Mailboxes Etc. U.S.A., Inc., supra* at 575 n.5. We conclude that the forum selection clause is prima facie valid and enforceable.

3. *Validity of forum selection clauses for claims under the Wage Act.* Melia argues that even if a forum selection clause is generally enforceable, public policy should prevent its application to Wage Act claims. According to Melia, the enforcement scheme and policy of the Wage Act dictate that a Massachusetts forum should always be available to aggrieved employees. We reject Melia's argument. Although the Wage Act does embody fundamental public policy, nothing in the Wage Act's text or structure suggests that enforcement must always be available in Massachusetts.

We begin by reviewing the history, policy, and enforcement mechanisms of the Wage Act. The Wage Act requires "every

person having employees in his service" to pay "each such employee the wages earned" within a fixed period after the end of a pay period. G. L. c. 149, § 148. The purpose of the Wage Act is "to prevent the unreasonable detention of wages." *Boston Police Patrolmen's Ass'n* v. *Boston,* 435 Mass. 718, 720 (2002), citing *American Mut. Liab. Ins. Co.* v. *Commissioner of Labor & Indus.,* 340 Mass. 144, 147 (1959). "The statute was intended and designed to protect wage earners from the long-term detention of wages by unscrupulous employers as well as protect society from irresponsible employees who receive and spend lump sum wages." *Cumpata* v. *Blue Cross Blue Shield of Mass., Inc.,* 113 F. Supp. 2d 164, 167 (D. Mass. 2000), citing *American Mut. Liab. Ins. Co.* v. *Commissioner of Labor & Indus., supra.*

The Wage Act provides for both public and private enforcement. The Attorney General may initiate a civil complaint against any person for a violation of the Wage Act. G. L. c. 149, § 150. An employee may also file a complaint with the Attorney General; if the Attorney General grants leave or fails to commence an action within ninety days, the employee may "institute and prosecute in his own name and on his own behalf, or for himself and for others similarly situated, a civil action for injunctive relief, for any damages incurred, and for any lost wages and other benefits." *Id.* An employee who prevails in a private action shall be awarded treble damages, costs, and attorney's fees. *Id.* The Wage Act also provides for criminal penalties of varying severity, depending on whether the violation was wilful and whether there were subsequent offenses, up to imprisonment for two years and a fine of $50,000. G. L. c. 149, § 27C.

The Wage Act proscribes "special contracts" that exempt employers from its provisions. In a provision of the Wage Act first appeared in St. 1896, c. 241, § 1, the Legislature decreed that "[n]o person shall by a special contract with an employee or by any other means exempt himself from [the Wage Act]." G. L. c. 149, § 148. An agreement to circumvent the Wage Act is illegal even when "the arrangement is voluntary and assented to." *Camara* v. *Attorney Gen.,* 458 Mass. 756, 760-761 (2011).

Antiwaiver provisions are characteristic of laws that protect fundamental public policy. See, e.g., *Bonny* v. *Society of Lloyd's,* 3 F.3d 156, 160-161 (7th Cir. 1993), cert. denied, 510 U.S.

1113 (1994) (Federal securities laws); *Wimsatt* v. *Beverly Hills Weight Loss Clinics Int'l, Inc.*, 32 Cal. App. 4th 1511, 1520-1521 (1995) (State franchise investment law). " 'Public policy' in this context refers to a court's conviction, grounded in legislation and precedent, that denying enforcement of a contractual term is necessary to protect some aspect of the public welfare." *Beacon Hill Civic Ass'n* v. *Ristorante Toscano, Inc.*, 422 Mass. 318, 321 (1996). In addition to prohibiting waivers, the Legislature has highlighted the fundamental importance of the Wage Act by repeatedly expanding its protections. Since the enactment of the Wage Act in 1886, St. 1886, c. 87, the Legislature has broadened the scope of employees covered,[6] the type of eligible compensation,[7] and the remedies available to employees whose rights have been violated.[8]

That the Wage Act prohibits waivers, however, does not require that private Wage Act claims be adjudicated in Massachusetts.

---

[6]The Wage Act was initially limited to employees of a "manufacturing, mining or quarrying, mercantile, railroad, street railway, telegraph, telephone and municipal corporation and every incorporated express company and water company." St. 1886, c. 87, § 1. The Legislature expanded this group of industries over the next fifty years, until it adopted the present language covering "[e]very person having employees in his service . . . ." St. 1935, c. 350.

[7]Statute 1943, c. 467, extended the Wage Act to cover commissions that are "definitely determined" and "due and payable." See generally *Okerman* v. *VA Software Corp.*, 69 Mass. App. Ct. 771, 775-780 (2007). Statute 1966, c. 319, expanded the definition of wages to include holiday and vacation pay. See generally *Electronic Data Sys. Corp.* v. *Attorney Gen.*, 454 Mass. 63, 66-71 (2009).

[8]The Wage Act initially authorized levying a fine of between ten and fifty dollars. St. 1886, c. 87, § 2. In St. 1929, c. 117, the Legislature added the alternative of imprisonment in a house of correction for up to two months. The Legislature gradually increased the limits of the fine in St. 1971, c. 590 (twenty to one hundred dollars); St. 1977, c. 664 (one hundred dollars to $500); and St. 1987, c. 559, § 29 ($500 to $3,000).

Remedies were dramatically increased by St. 1993, c. 110, § 182, codified at G. L. c. 149, § 150, which authorized a private right of action, including provision for treble damages and attorney's fees and costs; by St. 2008, c. 80, § 5, which made the treble damages mandatory, overruling our decision in *Wiedmann* v. *Bradford Group, Inc.*, 444 Mass. 698, 709 (2005); and by St. 1998, c. 236, § 7, codified at G. L. c. 149, § 27C, which authorized punishment of up to $25,000 or imprisonment for one year for wilful violations, and $10,000 or six months' imprisonment for nonwilful violations, with both penalties subject to enhancement for subsequent offenses.

Nowhere does the text of the Wage Act, which refers simply to a "civil action," guarantee venue in a Massachusetts court. See G. L. c. 149, § 150; *Dixon* v. *Perry & Slesnick, P.C.*, 75 Mass. App. Ct. 271, 273 (2009) (arbitration provision binding with respect to Wage Act claim).[9]

Contrary to Melia's argument, the private and public enforcement mechanisms of the Wage Act need not be enforceable in identical venues. Melia correctly notes that a forum selection clause cannot bar the Attorney General from commencing an action to enforce the Wage Act in Massachusetts. Cf. *Dixon* v. *Perry & Slesnick, P.C., supra* at 276 (arbitration provision cannot prevent enforcement by Attorney General). From this Melia infers that, because an employee seeking to bring a Wage Act claim must first receive approval from the Attorney General, G. L. c. 149, § 150, the employee is acting as a "de facto private attorney general" who must also be permitted to litigate in Massachusetts.

Melia's argument misconstrues the relationship between the Wage Act's public and private enforcement mechanisms. General Laws c. 149, § 150, merely grants an employee a private right of action. See *Salvas* v. *Wal-Mart Stores, Inc.*, 452 Mass. 337, 373 (2008); *Smith* v. *Winter Place LLC*, 447 Mass. 363, 368 n.12 (2006). It in no way vests an employee with the standing of the Attorney General. See *Carroll* v. *Marzilli*, 75 Mass. App. Ct. 550, 553-555 (2009) (rejecting argument that Massachusetts Civil Rights Act "places private parties in a parallel position to the Attorney General in terms of the enforcement of public rights" by analogizing to private actions for wage and hour violations). An employee may limit his remedies without similarly restraining the Attorney General. Cf. *Joulé, Inc.* v. *Simmons*, 459 Mass. 88, 95 (2011) (arbitration clause binds employee but does not restrain Massachusetts Commission Against Discrimination); *Dixon* v. *Perry & Slesnick, P.C., supra.*

---

[9]Compare *Morris* v. *Towers Fin. Corp.*, 916 P.2d 678, 679 (Colo. Ct. App. 1996) (invalidating forum selection clause claims under State's Wage Claim Act where statute authorized civil action in "any court having jurisdiction over the parties"), with *Adams Reload Co.* v. *International Profit Assocs., Inc.*, 143 P.3d 1056, 1059 (Colo. Ct. App. 2006) (enforcing forum selection clause for claims under State's Consumer Protection Act where statute lacked equivalent wording to Wage Claim Act).

We also reject Melia's contention that enforcing forum selection clauses would subvert practical enforcement of the Wage Act. Melia argues that it may be difficult for unpaid employees to assert their rights out of State. As noted above, however, the Attorney General always retains the power to enforce the Wage Act in Massachusetts. Should the Attorney General commence an enforcement proceeding, the forum selection clause could not prevent an employee from testifying, providing information, or otherwise participating in such a proceeding. Cf. *Joulé, Inc.* v. *Simmons, supra* at 98. Furthermore, as previously discussed, Massachusetts courts will not enforce a forum selection clause that was obtained through duress, abuse of economic power, or other unconscionable means. *Jacobson* v. *Mail Boxes Etc. U.S.A., Inc.,* 419 Mass. 572, 575 n.5 (1995). By contrast, when sophisticated parties negotiating at arm's length agree to litigate in a given forum, they presumably are aware of the potential costs of such an agreement. Massachusetts law requires us to respect their wishes. See *Cambridge Biotech Corp.* v. *Pasteur Sanofi Diagnostics,* 433 Mass. 122, 133 (2000).

4. *Choice-of-law analysis.* Finally, and most vigorously, Melia argues that the forum selection clause is unenforceable because the chosen forum may apply a law other than that of Massachusetts. Should the foreign court apply another State's law that is less protective of employees, the forum selection clause would effectively deprive the employee of substantive rights guaranteed by the Wage Act. The forum selection clause would thus operate as a "special contract," exempting an employer from the requirements of the Wage Act. G. L. c. 149, § 148. Melia draws support from the uncertainty of the judge regarding the outcome of the choice-of-law analysis that a New York court would conduct. The Superior Court judge found that the New York court "*may apply* Massachusetts law to Melia's unpaid wages claim" (emphasis added). Melia argues that the mere possibility of enforcement by a foreign tribunal under New York law is insufficient to protect the public policy embodied in the Wage Act.

We agree with Melia in principle. A forum selection clause that, in operation, would deprive an employee of substantive rights guaranteed by the Wage Act violates public policy and is unenforceable. See *Dixon* v. *Perry & Slesnick, P.C., supra* at

275 & n.5 (arbitration provision enforceable for Wage Act claim because it did not implicate employee's substantive rights). We further agree that public policy demands more than a mere possibility that the forum "may apply" the Wage Act or an equivalent law that would protect all of an employee's substantive rights.[10] See part 3, *supra.*

In practice, however, we share neither the judge's hesitation nor Melia's skepticism. On the facts alleged in this case, we are persuaded that a New York court, applying New York's choice-of-law rules, would apply Massachusetts law.

A New York court would begin by interpreting the reach of the contract's choice of New York law. New York courts are "reluctan[t] . . . to construe contractual choice-of-law clauses broadly to encompass extra-contractual causes of action." *Finance One Pub. Co.* v. *Lehman Bros. Special Fin., Inc.,* 414 F.3d 325, 334 (2d Cir. 2005), cert. denied, 548 U.S. 904 (2006), citing *Knieriemen* v. *Bache Halsey Stuart Shields Inc.,* 74 A.D.2d 290 (N.Y. 1980). "[T]ort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract, even when the contract also includes a broader forum-selection clause." *Finance One Pub. Co.* v. *Lehman Bros. Special Fin., Inc., supra* at 335. "Under New York law, in order for a choice-of-law provision to apply to claims for tort arising incident to the contract, the express language of the provision must be 'sufficiently broad' as to encompass the entire relationship between the contracting parties." *Krock* v. *Lipsay,* 97 F.3d 640, 645 (2d Cir. 1996), quoting *Turtur* v. *Rothschild Registry Int'l, Inc.,* 26 F.3d 304, 309-310 (2d Cir. 1994). "However, no reported New York cases present such a broad clause." *Finance One Pub. Co.* v. *Lehman Bros. Special Fin., Inc., supra.*

---

[10]Application of a foreign law would not impermissibly exempt an employer from the Wage Act if the chosen law would guarantee an employee all the substantive rights afforded by the Wage Act. Cf. *1-800-Got Junk? LLC* v. *Superior Court,* 189 Cal. App. 4th 500, 517-519 (2010) (choice-of-law provision invalid under State franchise investment law if it would diminish franchisee's rights, but not if it would enhance them). What is relevant for these purposes is the private enforcement rights of employees. As discussed part 3, *supra,* in all circumstances the Attorney General would retain jurisdiction to pursue civil and criminal actions under Massachusetts law.

In the present case, the contract's choice of New York law would not govern the Wage Act claim. The contract states that "this agreement shall be governed and construed in accordance with the laws of the State of New York" but makes no reference to statutory causes of action. New York's general choice-of-law rules must therefore determine the law pertinent to the Wage Act claim. See *id.*; *Krock* v. *Lipsay, supra.*

New York's choice-of-law principles, following the modern trend, aim to give "controlling effect to the law of the jurisdiction which, because of its relationship or contact with the occurrence or the parties, has the greatest concern with the specific issue raised in the litigation." *Babcock* v. *Jackson*, 12 N.Y.2d 473, 481 (1963). New York courts conduct this "interest analysis" somewhat differently with respect to tort and contract causes of actions. The characterization of a cause of action as contract or tort is itself determined by the forum's, in this case New York's, conflict of laws precedents. *Arakelian* v. *Omnicare, Inc.*, 735 F. Supp. 2d 22, 37-38 (S.D.N.Y. 2010), and cases cited.

For tort cases, New York courts seek "to effect the law of the jurisdiction having the greatest interest in resolving the particular issue." *Cooney* v. *Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993). The relevant contacts for this determination are "those which relate to the purpose of the particular law in conflict[,] the significant contacts are, almost exclusively, the parties' domiciles and the location of the tort." *Schultz* v. *Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (1985). When the law relates to regulation of conduct, as opposed to allocation of losses, the location of the tort will typically control. "If conflicting conduct-regulating laws are at issue, the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." *Cooney* v. *Osgood Mach., Inc., supra.*

For actions sounding in contract, New York courts determine the applicable law based on the "center of gravity" or the "grouping of contacts" most relevant to the contract. *Allstate Ins. Co.* v. *Stolarz*, 81 N.Y.2d 219, 226 (1993). There are typically five significant contacts: the places of contracting, negotiation, and performance; the location of the subject matter of the contract; and the domicil of the contracting parties. *Id.* at 227,

citing Restatement (Second) of Conflict of Laws § 188(2) (1971). In the employment context, the most determinative contact is the place of performance. "With respect to employment contracts, 'the matters of performance and breach are to be determined by the law of the place of performance, or, in the alternative, by the law of the [S]tate having the most significant contacts with the matter in dispute.' " *Arakelian* v. *Omnicare, Inc., supra* at 38, quoting *Tischmann* v. *ITT/Sheraton Corp.*, 882 F. Supp. 1358, 1366 (S.D.N.Y. 1995). In addition, when "the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests," the judge must consider those interests. *Allstate Ins. Co.* v. *Stolarz, supra* at 226 (considering public interests with respect to dispute about automobile insurance contract).

No published New York State opinion has characterized an action for violation of a wage statute as sounding in contract or tort. Nevertheless, we are confident that a New York court would apply to the present dispute the choice-of-law rules for conduct-regulating torts. Melia's claim arises out of a statute that regulates the conduct of all employers, not just Zenhire. A wage law thus effectuates a jurisdiction's "interest in regulating behavior within its borders." *Cooney* v. *Osgood Mach., Inc., supra.* See Black's Law Dictionary 1626 (9th ed. 2009) (defining "tort" as "civil wrong, other than breach of contract, for which a remedy may be obtained"). Although the parties did sign a contract, it was not necessary for the accrual of Melia's substantive claim and serves only as a measure of damages.[11]

New York State courts and Federal courts applying New

---

[11]Of course, the contract also serves as the basis for a common-law claim for breach of contract. It is elementary, in New York and elsewhere, that the failure to pay wages can simultaneously give rise to both a breach of contract claim and a statutory claim. See, e.g., *Simpson* v. *Lakeside Eng'g, P.C.*, 26 A.D.3d 882, 883 (N.Y. 2006) (breach of contract claim for nonpayment of wages distinct from alleged violation of labor law; attorney's fees applicable only to latter). Cf. *Karlin* v. *IVF Am., Inc.*, 93 N.Y.2d 282, 293 (1999) (same actions support common-law claim for lack of informed consent and statutory claim for deceptive advertising).

Where a complaint contains claims for both breach of contract and violation of a wage statute, the court must conduct a separate choice-of-law analysis for each claim. See, e.g., *Arakelian* v. *Omnicare, Inc.*, 735 F. Supp. 2d 22, 30 n.5, 36-38 (S.D.N.Y. 2010).

York's choice-of-law rules[12] have consistently applied tort choice-of-law principles to statutory claims arising from employment situations. See, e.g., *Beebe* v. *N.Y. Times Co.*, 666 F. Supp. 2d 321, 331 (E.D.N.Y. 2009) (age discrimination); *Bass* v. *World Wrestling Fed'n Entertainment, Inc.*, 129 F. Supp. 2d 491, 504 (E.D.N.Y. 2001) (sexual harassment and discrimination); *Padula* v. *Lilarn Props. Corp.*, 84 N.Y.2d 519, 522-523 (1994) (workplace safety); *DaSilva* v. *C & E Ventures, Inc.*, 83 A.D.3d 551, 554 (N.Y. 2011) (workers' compensation). Two unpublished opinions have applied the choice-of-law rules for conduct-regulating torts to wage claims under N.Y. Lab. Law § 198. Chong *vs.* Healthtronics, Inc., U.S. Dist. Ct., No. CV-06-1287 (E.D.N.Y. June 20, 2007) (Chong); Bierer *vs.* Glaze, Inc., U.S. Dist. Ct., No. CV-05-2459 (CPS) (S.D.N.Y. Oct. 6, 2006). A New York court would likely do the same in the present case.[13]

[12]Federal courts sitting in diversity apply the choice-of-law rules of the forum State. *Klaxon Co.* v. *Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

[13]Two New York cases have suggested otherwise, but their analyses are inapplicable or unconvincing. In *Arakelian* v. *Omnicare, Inc.*, *supra* at 37-39, the judge, applying New York choice-of-law principles, analyzed a claim under the Maryland Wage Payment and Collections Law (MWPCL) under both contract and tort rules. The judge expressed uncertainty whether claims under the MWPCL sounded in contract or tort, because a Federal District Court for the District of Maryland had concluded that such claims likely sounded in contract. *Id.* at 38, citing Yeibyo *vs.* E-Park of DC, Inc., U.S. Dist. Ct., No. DKC 2007-1919 (D. Md. Jan. 18, 2008) (Yeibyo). In both those cases, the contract and tort analyses led to the same result.

The *Arakelian* and Yeibyo cases represent a steady line of cases that have interpreted claims under the MWPCL as sounding in contract. *Taylor* v. *Lotus Dev. Corp.*, 906 F. Supp. 290, 295, 298 (D. Md. 1995) (*Taylor*), on which Yeibyo relied, dismissed a claim under the MWPCL because of a contractual clause that selected another State's law "to govern [the parties'] contractual rights and duties." *Taylor* reasoned that the wage claim "simply rehashes [the] breach of contract claim," *id.* at 297 n.8, and that "[t]he issue of what remedies are available to an employee if his employer withholds pay is certainly one which the parties could have resolved by explicit agreement." *Id.* at 298. Recent cases upholding *Taylor* have reiterated that the "MWPCL is not a fundamental Maryland public policy." *Kunda* v. *C.R. Bard, Inc.*, 671 F.3d 464, 468 (4th Cir. 2011).

The Wage Act, by contrast, does embody fundamental public policy. See part 3, *supra*. Like New York courts, see note 11, *supra*, Massachusetts courts have emphasized the distinction between Wage Act and contract claims. See *Newton* v. *Commissioner of the Dep't of Youth Servs.*, 62 Mass. App. Ct. 343, 346-347 (2004) ("prompt payment of wages statute creates an independent

Under tort principles, New York's preference for the "law of the jurisdiction where the tort occurred," *Cooney* v. *Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993), compels the application of Massachusetts law. Aside from the initial meetings with Fritzinger in New York, Melia performed all of his work for Zenhire — in particular, all the work for which he was allegedly not paid — in Massachusetts. The conduct giving rise to the cause of action — the nonpayment of wages — thus took place in Massachusetts. The decisions applying New York choice-of-law rules to statutory wage claims both deemed the location of the work to be dispositive. See Chong, *supra* (New York law applied where employee signed contract in Georgia but worked in New York); Bierer, *supra* (New York law applied where employee worked for New Jersey company out of her New York home office). Similarly here, Massachusetts would have the greatest interest in the outcome of litigation, and Massachusetts law would apply. *Cooney* v. *Osgood Mach., Inc., supra.*

Out of an abundance of caution, we consider the application of New York's choice-of-law principles with respect to claims sounding in contract. We first examine the place of performance and the location of other significant contacts. *Arakelian* v. *Omnicare, Inc.*, 735 F. Supp. 2d 22, 38 (S.D.N.Y. 2010). Here, the place of performance was exclusively Massachusetts. All of the potential clients whom Melia was to have solicited were

statutory right that can be enforced judicially even when a collective bargaining agreement addresses the subject matter of compensation"). To our knowledge, no court has ever suggested applying contract choice-of-law rules to a claim under the Wage Act or N.Y. Lab. Law § 198. We accordingly consider the uncertainty of the *Arakelian* court to be limited to claims under the MWPCL and not reflective of New York's characterization of statutory wage claims in general.

The second case, also construing a claim under the MWPCL but not relying on Maryland precedent, stated without hesitation that New York would treat wage claims as sounding in contract. Smith *vs.* Railworks Corp., No. 10 Civ. 3980 (JPO) (S.D.N.Y. Mar. 6, 2012). The court analogized a Wage Act claim to a breach of duty of loyalty claim, which New York courts deem to sound in contract. *Id.*, citing *Western Elec. Co.* v. *Brenner*, 41 N.Y.2d 291 (1977). The court did not consider other statutory causes of actions arising out of the employment relationship, which, like Wage Act claims, relate to wrongful conduct by employers. Nor did it consider the relevance of the governmental interests protected by New York's Payment of Wages Law. See note 14, *infra.*

located in Massachusetts. The other significant contacts do not tilt strongly in favor of either State. Melia's residence was in Massachusetts; Fritzinger's residence was in New York; and Zenhire is a Delaware corporation with principal place of business in New York. The record is silent as to the place of negotiation and execution. Because Melia was a resident of Massachusetts at all relevant times, we may presume that some negotiations took place in Massachusetts. Even assuming that the contract was executed in New York, the contacts remain split between Massachusetts and New York. Contrast *Torrico* v. *International Business Machs. Corp.*, 213 F. Supp. 2d 390, 403-404 (S.D.N.Y. 2002) (in totality of circumstances, center of gravity of employment relationship was headquarters of employer, because executive decisions were made there and employee traveled there substantially during course of employment).

When a contractual dispute relates to laws whose policies are "readily identifiable and reflect strong governmental interests," those interests may determine the choice-of-law analysis. *Allstate Ins. Co.* v. *Stolarz*, 81 N.Y.2d 219, 226 (1993). The New York Legislature has adopted a policy statement[14] explicating the public interests served by its Payment of Wages Law. Those

---

[14]1997 N.Y. Laws c. 605, § 1, provides: "The legislature declares that the working people of the state of New York are the key to our maintenance of a strong economy. The legislature finds, however, that too often the working people of our state do not receive the full wages they have earned, and that some workers are never paid at all for their labor. Underpaid and unpaid workers are found in all areas of commerce and industry, but are concentrated in low-wage areas such as garment factories and the service industry. Exploitation of these most vulnerable workers drives down wages for all working people. Low-wage workers who are unpaid or underpaid cannot support themselves and their families, and may be forced to rely on scarce public resources. Honest employers, who constitute the vast majority of those doing business in our state, suffer from unfair competition when others cut costs by underpaying their workers. Finally, the state loses precious tax revenue when employers avoid payment of wages. Especially as more and more New Yorkers are called upon to earn their living through work, we must ensure that working people are paid what they earn.

"If our economy is to thrive, the state must pursue enforcement of the wage provisions of the labor law with vigor and fairness. That enforcement is the mandate of the department of labor. The purpose of this legislation, therefore, is to provide the department of labor and working people with stronger and more varied tools with which to collect unpaid wages. The legislature also seeks to ensure that the most vulnerable workers have access to the department's

public interests are concentrated in the States where the employee resides and where the work was performed. Here, for example, Massachusetts resources may have been expended to support an unpaid Massachusetts resident; Zenhire's competitors may have been disadvantaged in their solicitation of business in Massachusetts; and tax revenues were not paid to Massachusetts. In sum, the place of performance was Massachusetts, the other contacts do not conclusively direct application of either State's law, and the governmental interests are concentrated in Massachusetts. Therefore, a New York court analyzing this Wage Act claim under contract principles would choose Massachusetts law.

When choice-of-law principles dictate application of a particular law, New York courts may still refuse to enforce that law if it conflicts with fundamental New York policy. This abstention is limited to laws that would "violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal." *Cooney* v. *Osgood Mach., Inc.*, *supra* at 78, quoting *Loucks* v. *Standard Oil Co.*, 224 N.Y. 99, 111 (1918). In short, it applies only to "those foreign laws that are truly obnoxious." *Cooney* v. *Osgood Mach., Inc.*, *supra* at 79. See *Welsbach Elec. Corp.* v. *MasTec N. Am., Inc.*, 7 N.Y.3d 624, 630-632 (2006).

New York courts would not hesitate to apply the Wage Act. The New York Court of Appeals stated this much in a virtually identical case. See *Boss* v. *American Express Fin. Advisors, Inc.*, 6 N.Y.3d 242 (2006). There, New York-based employees sued their Minnesota-based employer in New York under the New York Labor Law, despite a forum selection clause and choice-of-law clause in their employment agreement that designated Minnesota as the governing jurisdiction and Minnesota law as the governing law. *Id.* at 245-246. The plaintiffs argued, as does Melia, that because the laws of their State were more protective of their wages than Minnesota law, the forum selection clause should not be enforced. The New York Court of Appeals enforced the forum selection clause and dismissed the

---

enforcement mechanisms, in an effort to prevent the generalized devaluation of wages for all workers."

case. *Id.* at 246-247. The court declined to consider the plaintiffs' challenge to the choice of Minnesota law:

> "We express no opinion on the merits of plaintiffs' argument. It could and should have been made to a court in Minnesota — the forum the parties chose by contract. If New York's interest in applying its own law to this transaction is as powerful as plaintiffs contend, we cannot assume that Minnesota courts would ignore it, *any more than we would ignore the interests or policies of the State of Minnesota where they were implicated*" (emphasis added).

*Id.* at 247. In this case, a New York court would certainly recognize that the interests of the Commonwealth are implicated and would apply Massachusetts law.

5. *Future cases.* In light of our analysis under New York's choice-of-law rules, we now recognize a presumption that forum selection clauses are enforceable with respect to Wage Act claims. A party seeking to rebut this presumption must produce some evidence indicating that (1) the Wage Act applies; (2) the selected forum's choice-of-law rules would select a law other than that of Massachusetts; and (3) application of the selected law would deprive the employee of a substantive right guaranteed by the Wage Act. On the introduction of such evidence, the proponent of the forum selection clause would retain the ultimate burden of demonstrating that the clause does not operate as a "special contract." See *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. 20, 33-35 (2006).

A presumption that a forum would, like New York, usually apply Massachusetts law to Wage Act claims reflects the tendency of modern choice-of-law doctrines to produce similar results. Of the fifty States plus the territories (including the District of Columbia and Puerto Rico), forty-two have adopted a modern choice-of-law theory with respect to torts, and forty have done so with respect to contracts. P. Hay, P.J. Borchers, & S.C. Symeonides, Conflict of Laws § 2.20, at 95 (5th ed. 2010). While modern doctrines do vary in emphasis and specific formulations, we abide by our observation that, "despite the rhetoric of choice-of-law scholars, the courts and commentators 'are arriving at results broadly consistent with each other's

holdings.' " *Bushkin Assocs., Inc.* v. *Raytheon Co.*, 393 Mass. 622, 631 (1985), quoting R.A. Leflar, American Conflicts Law § 99, at 198 (3d ed. 1977). Jurisdictions that characterize Wage Act claims as sounding in tort and that maintain the traditional rule of lex loci delicti for tort cases would likewise select Massachusetts law for Wage Act claims accruing in Massachusetts.

Placing the burden of production on the opponent of the forum selection clause also accords with the general policy favoring forum selection clauses. Massachusetts courts enforce forum selection clauses so long as they are fair and reasonable. *Jacobson* v. *Mailboxes Etc. USA, Inc.*, 419 Mass. 572, 574-575 (1995). The opponent of a forum selection clause bears the "substantial burden" of showing that enforcement of a forum selection clause would be unfair and unreasonable. *Cambridge Biotech Corp.* v. *Pasteur Sanofi Diagnostics*, 433 Mass. 122, 133 (2000).

Finally, presumptive recognition of forum selection clauses reinforces the principles of interstate comity. "The notions of comity demanded by our Federal system require us to concede that the courts of our sister States, even when they reach a different decision than we would have, are endowed with an equal measure of wisdom and sympathy." *Cote-Whitacre* v. *Department of Pub. Health*, 446 Mass. 350, 369 (2006) (Spina, J., concurring), citing *Delk* v. *Gonzalez*, 421 Mass. 525, 530 (1995). We have long rejected the "provincial attitude regarding the fairness of other tribunals" that lies at the core of resistance to forum selection clauses. *The Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972). The courts of the Commonwealth must respect the ability of the courts of sister States to apply their choice-of-law rules fairly, to give effect to Massachusetts fundamental public policy, and, when appropriate, to adjudicate wage claims under Massachusetts law.

6. *Conclusion.* For the foregoing reasons, the judgment of the Superior Court is affirmed.

*So ordered.*