NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-189                                          Appeals Court


        EDWIN PARRIS & others[1] vs.  SHERIFF OF SUFFOLK COUNTY.


                         No. 17-P-189.

        Suffolk.     January 16, 2018. - September 5, 2018.

     Present:  Green, C.J., Trainor, Vuono, Massing, & Singh, JJ.[2]


Sheriff.  Massachusetts Wage Act.  Practice, Civil, Summary
     judgment.  Contract, Collective bargaining contract.
     Public Employment, Collective bargaining.  Labor,
     Collective bargaining, Overtime compensation, Failure to
     pay wages, Public employment.


     Civil action commenced in the Superior Court Department on
June 10, 2014.

     The case was heard by Paul D. Wilson, J., on motions for
summary judgment, and a motion for reconsideration was
considered by him.

_____

     [1] Shane Bouyer, Augusta Akukwe, Christopher Popov, and Jail
Officers and Employees Association of Suffolk County.  The four
lead plaintiffs seek to represent a class of 194 similarly
situated individuals.

     [2] This case was initially heard by a panel comprised of
Justices Trainor, Massing, and Singh.  After circulation of a
majority and dissenting opinions to the other Justices of the
Appeals Court, the panel was expanded to include Chief Justice
Green and Justice Vuono.  See Sciaba Constr. Corp. v. Boston, 35
Mass. App. Ct. 181, 181 n.2 (1993).

Dennis M. Coyne for the plaintiffs.
Janna Hansen, Assistant Attorney General, for the defendant.


MASSING, J.  The Wage Act, G. L. c. 149, §§ 148 and 150, generally requires that all public and private employers in the Commonwealth pay their employees' wages no more than seven days after the end of the pay period in which the wages were earned. Employees whose wages are detained longer than the Wage Act permits are entitled, after filing a complaint with the Attorney General, to initiate civil actions for injunctive relief, damages including lost wages, mandatory treble damages, and attorney's fees.  The defendant sheriff of Suffolk County (sheriff), as a State employer, is required to make payments in accordance with the Wage Act to "every mechanic, workman and laborer" he employs and to "every person employed in any other capacity by [him] in any penal or charitable institution . . . unless such mechanic, workman, laborer or employee requests in writing to be paid in a different manner" (emphasis supplied). G. L. c. 149, § 148, as appearing in St. 1960, c. 416.

In this case we must determine whether a provision in the collective bargaining agreements (CBAs) between the sheriff and the unions representing his employees amounts to a valid "request[] in writing" by the employees "to be paid in a different manner."  Ibid.  In addition, we must determine

whether the CBAs in question effectively waived the employees' rights to judicial enforcement of claims of late payment. We conclude that the unions had the authority, through collective bargaining, to exercise the employees' election to request that payment of overtime wages be made under a different schedule than the Wage Act provides, but that the CBAs here were not effective to waive the employees' rights to enforcement in court of the altered Wage Act schedule.

Background. The facts, as presented in the parties' cross motions for summary judgment, are not in dispute. The individual plaintiffs all work or worked for the sheriff at the Nashua Street jail between January, 2010, and July 25, 2015.[3] All of the employees are members of State collective bargaining units. Plaintiff Jail Officers and Employees Association of Suffolk County (union) is the exclusive bargaining representative for most of the employees; two other unions represent the remaining employees. The sheriff recognized these unions as the exclusive representatives of their members for the purpose of collective bargaining. See G. L. c. 150E, § 4.

---

[3] The plaintiffs became State employees when the Legislature transferred the sheriff's department to the Commonwealth on January 1, 2010. See St. 2009, c. 61, §§ 3, 4, 26; Sheriff of Suffolk County v. Jail Officers & Employees of Suffolk County, 465 Mass. 584, 595 (2013). As State employees working at a penal institution, the employees -- irrespective of their various job classifications -- were covered by the Wage Act. Contrast Newton v. Commissioner of the Dept. of Youth Servs., 62 Mass. App. Ct. 343, 348-349 (2004).

The sheriff and the unions entered into a series of CBAs relevant to this litigation.[4]  These CBAs contained an identical provision (art. X, § 7) reflecting the parties' agreement concerning the timing of overtime payments:  "Employees shall be paid for overtime service within twenty-five (25) working days following the month in which such service is performed."  At all relevant times the sheriff paid the employees their overtime wages under the CBA twenty-five-day provision rather than under the Wage Act's seven-day period.  In some instances the sheriff detained overtime wages beyond the twenty-five-day time frame permitted in the CBAs.[5]

After obtaining authorization from the Attorney General,[6] the lead plaintiffs commenced this action on behalf of

---

[4] The record includes copies of the CBAs between the sheriff and the three unions for the periods July 1, 2009, to June 30, 3012; July 1, 2012, to June 30, 2014; and July 1, 2014, to June 30, 2017.  In the agreements for 2009 through 2012, the employer was Suffolk County, "acting by and through the Sheriff of Suffolk County, hereinafter called 'the Municipal Employer.'" In the later CBAs, the employer was changed to the Commonwealth, reflecting the transfer of the sheriff's department to the Commonwealth.  Nonetheless, the CBAs continued to refer to the sheriff as the "Municipal Employer."

[5] The plaintiffs allege that overtime payments were made "from one to eight months or more after the regular bi-weekly pay period ended."  The sheriff admits "that there were a de minimus number of payments, representing a mere fraction of all of the payments in this case, that eclipsed the 25 day payment term."

[6] Under G. L. c. 149, § 150, the Attorney General may institute civil or criminal actions to enforce § 148.  In

themselves and other similarly situated employees.  They alleged that the sheriff violated the Wage Act by, among other actions, failing to pay overtime wages within seven days.[7]  Acting on cross motions for summary judgment, a judge of the Superior Court held that the employees, "having approved a written request in the CBA that they be paid in a different manner, have waived their right to enforce the schedule set out in the Wage Act."  On the plaintiffs' timely motion for reconsideration, the judge further concluded that to the extent the sheriff exceeded the twenty-five-day time limit, the plaintiffs were required to exhaust the CBA's grievance procedures.  Judgment entered for the sheriff, the plaintiff's complaint was dismissed, and this appeal ensued.

Discussion.  1.  Request to deviate from Wage Act payment schedule.  "The purpose of G. L. c. 149, § 148, is to prevent the evil of the 'unreasonable detention of wages [by employers].'"  Newton v. Commissioner of the Dept. of Youth Servs., 62 Mass. App. Ct. 343, 345 (2004), quoting from Boston Police Patrolmen's Assoc., Inc. v. Boston, 435 Mass. 718, 720 (2002).  See American Mut. Liab. Ins. Co. v. Commissioner of

addition, individual employees aggrieved by Wage Act violations may file civil suits on their own behalf ninety days after filing a complaint with the Attorney General or sooner if the Attorney General gives her written assent.

[7] The plaintiffs have voluntarily dismissed all claims except their claim for untimely payment of overtime wages.

Labor & Indus., 340 Mass. 144, 147 (1959) (Wage Act was adopted "primarily to prevent unreasonable detention of wages").  "We have consistently held that the legislative purpose behind the Wage Act . . . is to provide strong statutory protection for employees and their right to wages."  Crocker v. Townsend Oil Co., 464 Mass. 1, 13 (2012).  Accordingly, waiver of Wage Act protections is strongly disfavored.  See, e.g., Melia v. Zenhire, Inc., 462 Mass. 164, 170 (2012), quoting from Camara v. Attorney Gen., 458 Mass. 756, 760-761 (2011) ("An agreement to circumvent the Wage Act is illegal even when 'the arrangement is voluntary and assented to'").

The fundamental public policy against forfeiture of Wage Act protections is rooted in the "special contract" provision of the statute, originally inserted in 1896, Melia, supra, which states, "No person shall by a special contract with an employee or by any other means exempt himself from this section or from [G. L. c. 149, § 150]."  G. L. c. 149, § 148, as appearing in St. 1956, c. 259.  Public employees, however, have long been explicitly granted the ability to make written requests to alter the manner of their payments.  The ability to make this election predates the special contract provision.  Indeed, as early at 1887, city employees were entitled to payment of wages every seven days, "unless such employee shall request in writing to be paid in some different manner."  St. 1887, c. 399, § 1.

While the Wage Act has consistently given the individual public employee the ability to make a written request for a different manner of payment, the statute does not expressly permit an employee's collective bargaining representative to make such a written request on the employee's behalf. The first question we must decide, therefore, is whether a collective bargaining representative has the authority to exercise the individual employees' election through collective bargaining.

An interpretation of the Wage Act requiring individual employees personally to make this election would create a conflict with the public employee labor relations law, G. L. c. 150E. Under c. 150E, the relevant unions are the employees' "exclusive representative of all the employees . . . for the purpose of collective bargaining," G. L. c. 150E, § 4, inserted by St. 1973, c. 1078, § 2, and are empowered to act on the employees' behalf "with respect to wages, hours, standards or productivity and performance, and any other terms and conditions of employment," G. L. c. 150E, § 6, inserted by St. 1973, c. 1078, § 2. The employees' status as union members limits the sheriff's ability to deal directly with them. Rather, the unions possess the right to speak exclusively for all the employees on mandatory subjects of collective bargaining. See Service Employees Intl. Union, AFL-CIO, Local 509 v. Labor Relations Commn., 431 Mass. 710, 714 (2000). Direct

communications between the sheriff and the employees regarding changes to the statutory payment schedule would have been a prohibited practice. See id. at 715; Service Employees Intl. Union, Local 509 v. Department of Mental Health, 469 Mass. 323, 333 & n.10 (2014).

Public employee collective bargaining was first authorized by statute long after the Wage Act was in place. See Somerville v. Commonwealth Employment Relations Bd., 470 Mass. 563, 568-569 (2015) (discussing Commonwealth's recognition in 1958 of right of public employees to organize and to bargain collectively). "We assume that the Legislature was aware of existing statutes when enacting subsequent ones." Green v. Wyman-Gordon Co., 422 Mass. 551, 554 (1996). See Everett v. Revere, 344 Mass. 585, 589 (1962), quoting from Walsh v. Commissioners of Civil Serv., 300 Mass. 244, 246 (1938) ("A statute is to be interpreted with reference to the preëxisting law. . . . If reasonably practicable, it is to be explained in conjunction with other statutes to the end that there may be an harmonious and consistent body of law"); Fall River v. AFSCME Council 93, Local 3177, AFL-CIO, 61 Mass. App. Ct. 404, 406 (2004), quoting from Dedham v. Labor Relations Commn., 365 Mass. 392, 402 (1974) ("When possible, we attempt to read [statutes] and the collective bargaining law, as well as the agreements that flow from the collective bargaining law, as a 'harmonious whole'").

To harmonize the Wage Act with c. 150E, we hold that the unions may act on behalf of their members to exercise the employees' election under the Wage Act to alter the timing of the overtime payments. We emphasize that the provision of the CBAs at issue here did not represent a waiver of individual rights under the Wage Act. Rather, the provision represents a negotiated version of a different time period for payment, elected by the employees as permitted by the terms of the Wage Act, through their collective bargaining representatives. Accordingly, to the extent that the sheriff paid the employees' overtime wages within twenty-five days of the end of the month in which they were earned, the sheriff was in compliance with what the unions, on behalf of the employees, agreed was timely payment under the Wage Act.

2. Judicial remedies. Having held that the parties validly negotiated for the employees to be paid according to a different schedule than the Wage Act provides, we must determine whether the CBAs preclude the employees from judicial enforcement of their right to prompt payment under the negotiated Wage Act schedule. We conclude that they do not. "[T]he prompt payment of wages statute creates an independent statutory right that can be enforced judicially even when a collective bargaining agreement addresses the subject matter of compensation." Newton, 62 Mass. App. Ct. at 347.

Unlike the exercise of the Wage Act election to be paid in a different manner, we deal here with the purported waiver of an individual statutory right. "Although a union has the power to waive statutory rights related to collective activity, rights . . . which are of a personal, and not merely economic, nature are beyond the union's ability to bargain away." Blanchette v. School Comm. of Westwood, 427 Mass. 176, 183 (1998) (protections of antidiscrimination law, G. L. c. 151B, not waivable through collective bargaining). The Wage Act rights at issue here fall into this category: "The statutory right to the timely payment of wages does not involve the collective rights of employees but, rather, is designed to insure that each individual is paid promptly the wages due him or her." Newton, supra at 346.[8]

No Massachusetts appellate decision has ever upheld the waiver of individual statutory rights through a CBA. In Newton, even though the CBA included provisions concerning overtime, call-back, stand-by pay, and a grievance procedure "relating to

---

[8] Because claims under the Wage Act, like claims under the antidiscrimination law, concern individual rather than collective rights and are protected by a strong, statutorily expressed public policy, the case law concerning waiver of antidiscrimination claims is uniquely applicable here. These statutory rights are "unlike . . . the right to receive a financial reward beyond his base salary for advancing his education and job training," at issue in Rooney v. Yarmouth, 410 Mass. 485, 492 (1991) (contrasting Rooney's rights under Quinn Bill with "right to minimum wage and overtime pay" under the Fair Labor Standards Act and "right to equal employment opportunities").

the interpretation and application of the terms of the agreement," we held that the agreement did not waive the plaintiffs' "right to the timely payment of wages" under the Wage Act.  Ibid.  "While an individual may waive the requirements of the statute by a writing, the record does not disclose that the plaintiffs did so.  Nor does their collective bargaining agreement include any reference to G. L. c. 149, § 148, or to the time when wages must be paid."  Id. at 345.

The United States Supreme Court, in Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728, 745 (1981), similarly held that the grievance procedures of a CBA could not waive an individual employee's right to bring an action in Federal court alleging a violation of the minimum wage provision of the Fair Labor Standards Act (FLSA).  The Court stated that employees' rights under the FLSA "devolve on petitioners as individual workers, not as members of a collective organization.  They are not waivable."  Ibid.

More recently, in a sharply divided decision, the United States Supreme Court held for the first time that Federal law permits enforcement of a provision in a CBA that compels arbitration of individual employees' statutory age discrimination claims, but only by way of "a provision . . . that clearly and unmistakably requires union members to arbitrate claims arising under the Age Discrimination in

Employment Act of 1967." 14 Penn Plaza LLC v. Pyett, 556 U.S. 247, 251 (2009). The Court distinguished Barrentine on the ground that "the arbitration provision under review in Barrentine did not expressly reference the statutory claim at issue." Id. at 263.

We need not determine whether Massachusetts law permits a union to waive represented employees' rights and remedies under the Wage Act[9] because we conclude that the CBAs before us do not include such a waiver. The Commonwealth's fundamental public policy "to provide strong statutory protection for employees and their right to wages," Crocker, 464 Mass. at 13, would require, at the minimum, a clear and unmistakable waiver. The CBAs here do not meet this high standard.

The case of Warfield v. Beth Israel Deaconess Med. Center, Inc., 454 Mass. 390 (2009), like the case before us, considered the specificity necessary to waive judicial enforcement of an important public policy protection. The question in Warfield was whether a clause in an individual's employment agreement providing for arbitration of "[a]ny claim, controversy or dispute arising out of or in connection with" the contract

---

[9] In Warfield v. Beth Israel Deaconess Med. Center, Inc., 454 Mass. 390, 401 n.17 (2009), the court noted the sharp disagreement among the justices in 14 Penn Plaza LLC regarding whether "a collective bargaining agreement could waive an individual's right to court access for individually based statutory claims."

applied to an employment discrimination claim under G. L. c. 151B. Warfield, supra at 392. Both the Federal Arbitration Act (FAA) and the Massachusetts Arbitration Act explicitly permit written agreements to submit to arbitration any controversy between the parties. Id. at 394-395. Moreover, Federal law allows for arbitration of Federal employment discrimination disputes, and the court assumed without deciding that Massachusetts law likewise would permit arbitration of employment discrimination claims under G. L. c. 151B. Warfield, supra at 395. In addition, both Federal and State law and policy favor arbitration, creating a rebuttable presumption of arbitrability. Id. at 396.

Nonetheless, relying on the Commonwealth's "overriding governmental policy proscribing various types of discrimination, set forth in G. L. c. 151B," Warfield, supra at 398, quoting from Massachusetts Bay Transp. Authy. v. Boston Carmen's Union, Local 589, 454 Mass. 19, 26, 29 (2009), the court held that "an employment contract containing an agreement by the employee to limit or waive any of the rights or remedies conferred by G. L. c. 151B is enforceable only if such an agreement is stated in clear and unmistakable terms." Warfield, supra.[10]

---

[10] To the extent our dissenting colleagues assert that the presumption of arbitrability overrides the need for a clear and unmistakable waiver, the Supreme Judicial Court considered that issue at length, see Warfield, supra at 397-401, and concluded

Similarly in Blanchette, 427 Mass. at 183, after determining that the plaintiff's individual judicial remedies could not be waived by her union's collective bargaining agreement, the court considered whether she had waived those remedies by her own actions. The court assumed that the plaintiff "may have been able explicitly and voluntarily to waive her right to pursue her statutory civil rights claim in a judicial forum," but held that "there is no evidence that [she] made such an explicit and voluntary waiver." Id. at 184.

Finally, in Crocker, 464 Mass. at 12, the court considered whether a general release agreement made in settlement of an employment dispute could insulate an employer from Wage Act liability. Resolving the tension between the Wage Age, which generally prohibits any agreement to circumvent its protections, and "the contravening public policy favoring the enforceability of general releases," id. at 14, the Crocker court created a limited exception to the "special contract" prohibition. Melia, 462 Mass. at 170 (citation omitted). To protect against the possibility "that the strong protections afforded by the Wage

that "[t]he interpretive rule we state here is not inconsistent with the presumption of arbitrability embedded in the FAA." Id. at 399. Post at  . The court emphasized that the case concerned "an 'overriding' statutorily expressed, public policy," calling for "distinct treatment," Warfield, supra at 400 n.16 (citation omitted) -- as does the case before us. It was in this context that the court further observed that an employment contract need not "specifically list every possible statutory claim that might arise." Ibid.

Act could be unknowingly frittered away under the cover of a general release in an employer-employee termination agreement," the court held that such an agreement "will be enforceable as to the statutorily provided rights and remedies conferred by the Wage Act only if [it] is stated in clear and unmistakable terms." Crocker, supra. "In other words, the release must be plainly worded and understandable to the average individual, and it must specifically refer to the rights and claims under the Wage Act that the employee is waiving." Ibid.

Thus, even if Massachusetts were to allow a provision of a CBA to waive represented employees' individual rights and remedies under the Wage Act, the fundamental public policy to prevent employees' unwitting waiver of their individual rights would require "establishing a relatively narrow channel through which waiver of Wage Act claims can be accomplished," id. at 15 -- that is, a clear and unmistakable statement. The CBAs here do not meet this high standard.

With respect to the grievance procedure, the CBAs state in art. VII, "Only matters involving the question whether the [sheriff] is complying with the written provisions of this Agreement shall constitute grievances under this Article." This provision does not even mention, let alone clearly and unmistakably state, that the employees have waived their rights to judicial enforcement of Wage Act violations. See Wright v.

Universal Maritime Serv. Corp., 525 U.S. 70, 80 (1998) (general arbitration clause, providing for arbitration of "[m]atters under dispute," effective as to contractual, but not statutory, claims; "a union negotiated waiver of employees' statutory right to a judicial forum" must be "clear and unmistakable").

Even though the unions agreed to an extended period for the timely payment of wages under the Wage Act, the unions did not waive the employees' Wage Act remedies with respect to payments withheld longer than the negotiated standard permits. The twenty-five-day payment window is both a provision of the CBAs and a requirement that the sheriff must meet to comply with the Wage Act.[11] "[I]t is . . . well-established that there are certain personal, statutory rights that can be enforced judicially even though they are incorporated into a collective bargaining agreement. The mere fact that those rights may be created both by contract and by statute and may be violated by the same factual occurrence does not vitiate their distinct and separate nature." Newton, 62 Mass. App. Ct. at 346 (citations omitted). "[W]e agree with the plaintiffs that the right to timely payment of wages is a distinct, independent statutory

_____

[11] Our dissenting colleagues erroneously contend that the twenty-five-day provision is solely a creature of the CBAs. Post at   . To the contrary, it represents a "request[] in writing," made under the provisions of the Wage Act, "to be paid in a different manner." G. L. c. 149, § 148, as appearing in St. 1960, c. 416.

right that can be enforced judicially even though the subject matter of overtime . . . is incorporated in the plaintiffs' collective agreement." Ibid.

The cases of Machado v. System4 LLC, 471 Mass. 204 (2015), and Dixon v. Perry & Slesnick, P.C., 75 Mass. App. Ct. 271 (2009), two decisions that enforced individually negotiated agreements to submit Wage Act claims to arbitration without requiring explicit reference to the Wage Act in the arbitration clause,[12] are not to the contrary. Neither of those cases concerned a purported waiver of individual rights in a CBA, a distinction explicitly relied upon in Dixon. See Dixon, supra at 277 & n.8.

Moreover, both cases reasoned that the arbitration provisions at issue did not implicate the employees' substantive rights under the Wage Act or "exempt" the employer from the Wage Act's operation, "but solely dictate[d] the forum in which the plaintiffs' right to recovery will be determined." Machado, supra at 217-218. See Dixon, supra at 275 & n.5. Here, however, not all of the statutory remedies available to the

_____

[12] In Dixon, supra at 277 n.8, we rejected the employee's argument that she did not waive her right to litigate her claim because her waiver was not made "explicitly and voluntarily," citing Blanchette, 427 Mass. at 184. In Machado, supra at 216-217, the court declined to extend the rule in Crocker "and hold that the arbitration clause does not apply to [the plaintiffs'] Wage Act claims given that it makes no explicit mention of such claims."

employees in court would be available to them under the CBAs. The grievance procedure under the CBAs is limited "[o]nly [to] matters involving the question whether the [sheriff] is complying with the written provisions of [the CBA]." The CBAs do not provide contractual remedies of treble damages or attorney's fees, which are purely Wage Act terms. Indeed, the sheriff asserts in his brief that "any alleged violation with respect to the timing of overtime pay would be a violation of that CBA provision, and not the Wage Act," and that the plaintiffs "are not entitled to damages, treble or otherwise, since there is no Wage Act violation."[13] Even if the CBAs were considered ambiguous as to the availability of Wage Act remedies, that ambiguity alone would demonstrate why an express reference to Wage Act rights is essential. The CBAs here do not include sufficiently clear and unmistakable language to waive the employees' individual judicial remedies contained in G. L. c. 149, § 150.

---

[13] Justice Singh, in her dissent, asserts that "[b]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute," quoting from Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 628 (1985). Post at . While this statement may be true, it presupposes both an agreement to arbitrate and an arbitration provision that incorporates the full range of statutory remedies. See Barrentine, 450 U.S. at 745 ("Under the FLSA, courts can award actual and liquidated damages, reasonable attorney's fees, and costs. 29 U.S.C. § 216[b]. An arbitrator, by contrast, can award only that compensation authorized by the wage provision of the collective-bargaining agreement").

Conclusion.  The plaintiff employees' election, through the CBAs and authorized by the Wage Act, that payment of overtime wages would be considered timely if made "within twenty-five (25) working days following the month in which such service is performed" is effective to supplant the Wage Act's seven-day requirement.  The plaintiffs did not waive their Wage Act remedies for payment of wages beyond the twenty-five-day period.  Accordingly, we vacate the judgment dismissing the plaintiffs' complaint.  The plaintiffs may proceed to enforce their claims for late payment in the Superior Court under G. L. c. 149, § 150.

So ordered.

SINGH, J. (dissenting, with whom Trainor, J., joins). I agree with the majority that the provision of the collective bargaining agreement (CBA) setting forth a twenty-five-day time limit for the payment of overtime wages, rather than a seven-day time limit as set forth in the Wage Act, is enforceable as a "request[] in writing to be paid in a different manner," exercised by the unions on behalf of the employees. G. L. c. 149, § 148, as appearing in St. 1960, c. 416. It follows therefore that any dispute arising out of this provision of the CBA must first be pursued within the grievance procedure provided for in the CBA. See Azzi v. Western Elec. Co., 19 Mass. App. Ct. 406, 408 (1985) (before bringing action against employer for violation of CBA, employee required to exhaust grievance procedure), citing Vaca v. Sipes, 386 U.S. 171, 184 (1967). To the extent that the majority allows employees to elect a judicial remedy in the first instance, bypassing the contractual remedies provided for in the CBA, I dissent.

The CBA provides that "matters involving the question whether the [sheriff of Suffolk County (sheriff)] is complying with the written provisions of this Agreement shall constitute grievances" and sets out a detailed grievance procedure to be followed, ultimately concluding in binding arbitration. The employees' claim to have not been paid overtime wages within twenty-five days as required by the CBA unquestionably falls

within the definition of a grievance.  The employees were therefore required to pursue and to exhaust their contractual remedies through the grievance procedure; election of a judicial remedy in the first instance was not permissible.  See Malden Police Patrolman's Assn. v. Malden, 92 Mass. App. Ct. 53, 59 (2017) ("Employees may not simply disregard the grievance procedures set out in a collective labor contract and go direct[ly] to court for redress against the employer"), quoting from Balsavich v. Local Union 170 of the Intl. Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of America, 371 Mass. 283, 286 (1976).

Relying primarily on cases involving claims of employment discrimination,[1] the majority contends that the CBA must state in "clear and unmistakable" terms that employees waive the right to bring a Wage Act claim in court for claims arising out of the CBA provision requiring overtime wages to be paid within twenty-five days.  Ante at   .  Yet, there is a presumption of arbitrability in contracts containing arbitration clauses.  See Drywall Sys., Inc. v. ZVI Constr. Co., 435 Mass. 664, 666 (2002)

---

[1] See Blanchette v. School Comm. of Westwood, 427 Mass. 176 (1998) (retaliation based on sexual harassment claim); Massachusetts Bay Transp. Authy. v. Boston Carmen's Union, Local 589, 454 Mass. 19 (2009) (handicap discrimination); Warfield v. Beth Israel Deaconess Med. Center, Inc., 454 Mass. 390 (2009) (gender discrimination); Wright v. Universal Maritime Serv. Corp., 525 U.S. 70 (1998) (disability discrimination); 14 Penn Plaza LLC v. Pyett, 556 U.S. 247 (2009) (age discrimination).

(arbitration of particular claim "should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage"). Thus, there is no need for the CBA to "list every possible statutory claim that might arise." Warfield v. Beth Israel Deaconess Med. Center, Inc., 454 Mass. 390, 400 n.16 (2009).

In the employment discrimination cases, the courts were concerned that individual statutory rights to be free from discrimination may be unwittingly waived through general arbitration clauses in agreements making no mention of discrimination. See id. at 402 (statutory gender discrimination claim could be pursued in court, despite arbitration clause in employment contract, where there was "no contractual term dealing with discrimination"). That concern is not present here where the claim arises out of an explicit term of the CBA concerning the time period within which overtime wages must be paid.

Additionally, the rationale for not applying the presumption of arbitrability in employment discrimination cases has no applicability here. See Wright v. Universal Maritime Serv. Corp., 525 U.S. 70, 78-79 (1998) (noting that presumption of arbitrability is rooted in rationale that arbitrators are in better position than courts to interpret terms of CBAs, court

explained that presumption does not have force in employment discrimination context where arbitrator would be called upon to interpret discrimination statutes).  The claim in this case does not require arbitrators to interpret the Wage Act but, rather, to interpret the CBA as negotiated by the parties.

Moreover, the clear and unmistakable standard has never been required to permit Wage Act claims to be submitted to arbitration.  To the contrary, in Machado v. System4 LLC, 471 Mass. 204, 216-217 (2015), the court considered a broad arbitration clause that required any claim arising out of the parties' franchise relationship to be submitted to arbitration.[2] Relying on Crocker v. Townsend Oil Co., 464 Mass. 1 (2012), as the majority does here, the plaintiffs argued that their Wage Act claims were not arbitrable because the arbitration clause made no mention of the Wage Act.  Machado, supra.  Rejecting this argument, the court explained that an arbitration agreement "does not permit an employer to thwart or exempt itself from Wage Act obligations, but solely dictates the forum in which the

---

[2] Although the arbitration clause in Machado was contained within individual franchise agreements, as opposed to a CBA, "[n]othing in the law suggests a distinction between the status of arbitration agreements signed by an individual employee and those agreed to by a union representative."  14 Penn Plaza LLC v. Pyett, supra at 258.

plaintiffs' right to recovery will be determined."[3]  Id. at 217-218.  Thus, despite the absence of clear and unmistakable language indicating waiver of a judicial forum for Wage Act claims, the plaintiffs were required to submit their claims to arbitration as provided in the CBA.  See Dixon v. Perry & Slesnick, P.C., 75 Mass. App. Ct. 271, 275-276 (2009) (Wage Act claim required to be submitted to arbitration pursuant to general arbitration clause with no reference to Wage Act).

Given that the provision of the CBA setting forth a twenty-five-day time limit for the payment of overtime wages is enforceable, any claim that the sheriff violated this provision must be resolved, in the first instance, through the mechanism provided for in the CBA.  I would affirm the judgment in its entirety.

---

[3] "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum.  It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration."  Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985).

TRAINOR, J. (dissenting).  I, like my dissenting colleague, also agree with the majority that the twenty-five-day time limit for the payment of overtime wages is enforceable as a "request[] in writing to be paid in a different manner" than the seven-day payment requirement contained in the Wage Act.  See G. L. c. 149, § 148, as appearing in St. 1960, c. 416.  However, I do not believe it was necessary to "harmonize the Wage Act with c. 150E" as the majority holds.  <u>Ante</u> at  .  Collective bargaining agreements (CBAs) are not the kind of contracts from which the Wage Act was attempting to protect workers.[1,2]  See

---

[1] "During the period preceding World War I, in which [the Illinois version of the Wage Act] was originally enacted, many State legislatures outlawed and forbade certain and various kinds of individual contracts between the employer and individual employees in the belief that 'employers had an unfair economic advantage over individual wage earners because of their superior economic power, including the present control over the means of livelihood in an industrial system and took advantage of such wage earners' absolute necessity to make a living on any terms available."  <u>Pullman Co</u>. v. <u>Cummins</u>, 10 Ill. 2d 454, 467-468 (1957) (citation omitted).

[2] "The national policy favoring collective bargaining and industrial self-government was first expressed in the National Labor Relations Act of 1935, 29 U.S.C. § 151 et seq. (the Wagner Act).  It received further expression and definition in the Labor Management Relations Act, 1947, 29 U.S.C. § 141 et seq. (the Taft-Hartley Act).  Predicated on the assumption that individual workers have little, if any, bargaining power, and that 'by pooling their economic strength and acting through a labor organization freely chosen by the majority, the employees of an appropriate unit have the most effective means of bargaining for improvements in wages, hours, and working conditions,' . . . these statutes reflect Congress' determination that to improve the economic well-being of workers, and thus to promote industrial peace, the interests of

Rooney v. Yarmouth, 410 Mass. 485, 492-494 (1991); Crocker v. Townsend Oil Co., 464 Mass. 1, 13-15 (2012).

I dissent, however, from the majority holding that employees subject to the CBA may elect to enforce its provision for the payment of overtime wages by employing the judicial remedy contained in the Wage Act. Ante at . The appropriate forum for the remedy is arbitration, as stated in the CBA.

In 1974, the town of Yarmouth (town) voted to accept the provisions of G. L. c. 41, § 108L (the Quinn Bill).[3] Rooney, supra at 487. Sometime after the town's acceptance, the town and the union representing police officers adopted § 108L as a provision of their CBA, including "[a]mendments passed by the State legislature, now and in the future." Rooney, supra at 487

---

some employees in a bargaining unit may have to be subordinated to the collective interests of a majority of their co-workers. . . . The rights established through this system of majority rule are thus 'protected not for their own sake but as an instrument of the national labor policy of minimizing industrial strife "by encouraging the practice and procedure of collective bargaining." 29 U.S.C. § 151.'" Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728, 735 (1981).

[3] Section 108L established a career incentive pay program for police officers in the form of salary increases for officers who further their education. Rooney, supra at 487. Municipalities that accepted the provisions of § 108L would be entitled to reimbursement from the Commonwealth of one-half of the costs of the incentive benefits. Ibid.

n.2.[4] The Rooney court determined that the parties intended to make § 108L part of, and subject to, the CBA. Id. at 491. When a dispute arose concerning the payment of certain salary increases, an employee police officer claimed that he was not required to arbitrate the dispute because G. L. c. 41, § 108L (i.e., statutory rights) and constitutional rights regarding property rights through 42 U.S.C. § 1983 were involved. Rooney, supra at 490. The employee police officer insisted that he was entitled to a judicial remedy and that even if the dispute were arbitrable under the CBA, arbitration would not be an exclusive remedy. Ibid. His failure to pursue arbitration would thus not justify a dismissal of the action. Ibid. The Rooney court held:

> "[Section] 108L does not vest in [the employee] a personal, substantive, nonwaivable statutory guarantee that he is free to enforce judicially notwithstanding the incorporation of § 108L into the [CBA]. . . . [The employee] plainly does not have in § 108L an independent statutory right that is unencompassed by the [CBA]. . . . We conclude that, by agreeing to the incorporation of § 108L into the [CBA], the union effectively waived any right [the employee] may have had to judicial relief based on § 108L. [The employee's] exclusive remedy . . . was through the grievance process provided in the agreement."

---

[4] The CBA also incorporated a binding arbitration clause for all disputes arising out of the agreement. Rooney, supra at 486.

Id. at 492, 494.[5]  Here, as the majority would agree, there was no attempted waiver by the CBA of the statutory right to timely payment of overtime wages.  The CBA merely, as specifically allowed by the Wage Act, determined what the period of time would be for the prompt payment of overtime wages for the employees covered by the CBA.

The cases cited by the majority to support the proposition that this case represents a situation of a nonwaivable right are inapposite.  See Blanchette v. School Comm. of Westford, 427 Mass. 176, 183 (1998) (protections of G. L. c. 151B [anti-discrimination law] cannot be waived through CBA); Warfield v. Beth Israel Deaconess Med. Center, Inc., 454 Mass. 390, 398 (2009) (applied arbitration requirement to employment discrimination claim under G. L. c. 151B; "an agreement by the employee to limit or waive any of the rights or remedies conferred by G. L. c. 151B is enforceable if such an agreement is stated in clear and unmistakable terms"); Crocker, 464 Mass. at 14 (arbitration, pursuant to agreement, "will be enforceable

_____

[5] Significantly, both for the Rooney decision and our case here, a nonwaivable statutory right would include, for example, the right to the statutory minimum wage, the right to overtime pay (regardless of the timing of payment), or the right to equal employment opportunities.  See, e.g., School Comm. of Brockton v. Massachusetts Commn. Against Discrimination, 377 Mass. 392, 399 (1979); Alexander v. Gardner Denver Co., 415 U.S. 36, 51 (1974); Barrentine v. Arkansas-Best Freight Sys., supra at 739-746.  Also, the union in Rooney incorporated the entire statute into the CBA, including future amendments.  Here, the union created a new payment period that existed only within the CBA.

as to the statutorily provided rights and remedies conferred by the Wage Act only if such an agreement is stated in clear and unmistakable terms"); Barrentine v. Arkansas-Best Freight Sys., 450 U.S. 728, 737-744 (1981) (right to minimum wage and overtime pay cannot be waived through a CBA); Wright v. Universal Maritime Serv. Corp., 525 U.S. 70 (1998) ("union negotiated waiver of employees' statutory right to a judicial forum" in general arbitration clause must be "clear and unmistakable").

And, finally, the majority misunderstands the holding in Newton v. Commissioner of the Dept. of Youth Servs., 62 Mass. App. Ct. 343 (2004). In Newton, employees of a Department of Youth Services (DYS) forestry camp brought an action against DYS under the Wage Act for failure to pay overtime and for other extra pay. Id. at 344. Unlike our case, while the DYS employees were subject to a CBA and its arbitration clause, the CBA made no mention of the Wage Act or of any of its specific requirements. Id. at 345. The court held that, "[w]hile an individual may waive the requirements of the statute by a writing, the record does not disclose that the plaintiffs did so. Nor does their collective bargaining agreement include any reference to G. L. c. 149, § 148, or to the time when wages must be paid" (emphasis supplied). Newton, supra.

The Wage Act allowed the inclusion of the provision of the CBA at issue here, and the majority agrees with this. Ante at

.  The twenty-five-day payment requirement contained in the CBA exists only in the CBA and not in the Wage Act.  The CBA does not and cannot amend the Wage Act.  The twenty-five-day payment requirement created by, and existing only in, the CBA can be enforced only within the forum (i.e., arbitration) provided in the CBA.